| | |
|---|---|
| District Court, Chaffee County, Colorado<br>Court Address:<br>142 Crestone Ave.<br>Salida, CO 81201 | DATE FILED: March 21, 2017 10:24 AM<br>FILING ID: EF1FF95291720<br>CASE NUMBER: 2017CV30022 |
| PLAINTIFFS: Sarah C. Fuchs and the Estate of Rodney G. Fuchs,<br>v.<br>DEFENDANT: Safeco Insurance Company of America, a New Hampshire corporation. | ▲ COURT USE ONLY ▲ |
| Attorney for Plaintiff:<br>Randall Herrick-Stare, Atty. Reg. #: 7221<br>Marquez & Herrick-Stare, LLC<br>102 North I Street<br>Salida, CO 81201<br>Phone Number: 719-539-7663<br>Fax Number:    719-539-3326<br>E-mail: rhs@mhslaw.us | District Court Case No:<br><br>2017 CV<br>_____<br><br>Division<br>Courtroom |

**FIRST AMENDED COMPLAINT FOR COMPENSATORY AND STATUTORY DAMAGES, AND JURY DEMAND**

The Plaintiffs, Sarah Fuchs (hereinafter "Ms. Fuchs" and together with her late husband "the Fuchses"), and the Estate of Rodney G. Fuchs (hereinafter "Mr. Fuchs estate") by way of a first amended complaint (correcting minor word processing

1



errors) for compensatory and statutory damages against Safeco Insurance Company of America (hereinafter "Safeco"), state as follows:

## JURISDICTION AND VENUE

1. The Fuchses invoke this Court's jurisdiction pursuant to Article VI, § 9 of the Colorado Constitution.

2. Pursuant to C.R.C.P. 98, venue is proper in Chaffee County because the subject real estate is located here, the Fuchses resided and reside here and the events which are the subject of this complaint took place here.

## PARTIES AND INSURANCE

3. The Fuchses are beneficiaries of the Fuchs Revocable Living Trust (hereinafter "Fuchs Trust") which is the title owner of real estate in Chaffee County, to wit: Lots 40 and 41 Eagle Roost Subdivision, aka 16700 Falcon Drive, Nathrop, Colorado (hereinafter "Premises").

4. Rodney G. Fuchs died February 27, 2017. The Personal Representative of his estate is his wife, Plaintiff Sarah Fuchs.

5. Safeco is an insurance company licensed to conduct the insurance business in Colorado.

6. Safeco issued homeowners policy OY7365010 to the Fuchses. The policy period was from December 15, 2015, to December 15, 2016. The declarations page of the Safeco policy is appended hereto as Exhibit 1 and incorporated by reference. The described policy is hereinafter referred to as "The Policy."

7. The policy forms referenced in the declarations page (Exhibit 1) are appended here as Exhibit 2 and incorporated by reference.

8. In handling and denying the Fuchses' claim, Safeco acted through its employee, Mr. Greg Young (hereinafter "Mr. Young"). Mr. Young was at all times relevant to this complaint acting within the course and scope of his authority as an employee of Safeco.

Case No. 1:17-cv-00896-RM-MJW   Document 2-1   filed 04/12/17   USDC Colorado
pg 3 of 8

CHRONOLOGY OF EVENTS

9. Sometime in early to mid-March 2016, less than two weeks before March 22, 2016, water began escaping from the boiler system at the Premises. It continued flowing until the first floor of the Premises was flooded with approximately 1" to 2" of water. Mold began to grow in the Premises.

10. On March 22, 2016, the flooding of the Premises was discovered, and steps were taken to rid the Premises of water and begin remediation.

11. On March 22, 2016, Mr. Fuchs contacted Safeco to report his claim.

12. The flooding of the Premises discovered March 22, 2016, and the mold growing as a result, caused significant damage to the Premises and its contents, including mold infestation, floor warping, and drywall disintegration.

13. In making inquiry regarding the flooding of the Fuchses' residence, Safeco did not speak to either Carrie Carey or Richard Hartney.

14. After a superficial investigation, Safeco denied the Fuchses' claim. Safeco's letter of March 28, 2016, denying the claim is appended hereto as Exhibit 3.

15. The Fuchses began to remediate the damage done to the Premises and its contents by the flooding.

16. By letter of November 22, 2016, the Fuchses challenged Safeco's denial of their flooding and mold claim. That letter is appended hereto as Exhibit 4 and incorporated by reference.

17. By letter of December 7, 2016, Safeco reaffirmed its denial of the Fuchses' claim. The December 7, 2016, letter denying the Fuchses' claim for the second time is appended hereto as Exhibit 5 and incorporated by reference.

18. The Fuchses have continued to remediate the effects of the flood. In time and money, the Fuchses have expended over $100,000 in remediation efforts.

INSURANCE COVERAGES AND SAFECO DECISION-MAKING

19. The Policy provides for "accidental direct physical loss to property described (i.e. the Premises and its contents)… except as limited or excluded."

20. The flooding of the Premises was "accidental."

21. The flooding of the Premises was "direct physical loss to property described."

22. The Policy excludes from coverage "loss caused directly or indirectly by any of the following excluded perils. Such loss is excluded regardless of any other cause or event contributing concurrently or in any sequence to the loss."

23. In its first denial letter (Exhibit 3), Safeco identified no "other cause or event contributing concurrently or in any sequence" to the escape of water from the Fuchses' boiler system.

24. When inquiry was made to Safeco in the November 22, 2016, letter (Exhibit 4) if it was aware of "any other cause or event contributing concurrently or in any sequence" to the escape of water from the Fuchses' boiler system, Safeco ignored the inquiry and, to the date of the filing of this complaint, has not identified any such "other cause or event."

25. In the "BUILDING PROPERTY LOSSES WE DO NOT COVER" section of the policy, Safeco listed in twenty numbered paragraphs various causes of damage that were excluded from coverage. But, after ¶ 6 the policy stated, "However, we do insure for any resulting loss from Items 1. through 6. unless the resulting loss is itself excluded under **Building Property Losses We Do Not Cover** in this Section." This clause defines an exception to the exclusions set forth in "Items 1. through 6." Included in this exception to the exclusions were the following matters, relied upon to deny the Fuchses' claim:

    a. "Exclusion 5. Continuous or repeated seepage or leakage of water or steam, or the presence or condensation of humidity, moisture or vapor which occurs over a period of weeks, months or years."
    b. "Exclusion 6. a. wear and tear, marring, scratching, deterioration."
    c. "Exclusion 6. b. inherent defect, mechanical breakdown."
    d. "Exclusion 6. c. smog, rust or other corrosion, or electrolysis."

26. Because they were excepted from the exclusions, these risks (Exclusion 5 and 6a-c) were covered, "unless the resulting loss is itself excluded under **Building Property Losses We Do Not Cover** in this Section."

4

27. The Fuchses' claim was not and is not premised upon "marring, scratching, (or) deterioration."

28. Safeco had no evidence of "wear and tear" in the Premises or the boiler system before March 29, 2016.

29. Safeco had no evidence of "inherent defect" in the Premises or the boiler system before March 29, 2016.

30. Safeco had no evidence of "mechanical breakdown" in the Premises or the boiler system before March 29, 2016.

31. Safeco had no evidence of "smog, rust or other corrosion, or electrolysis" in the Premises or the boiler system before March 29, 2016.

32. There was no "resulting loss" to the Fuchses "itself excluded under **Building Property Losses We Do Not Cover** in this Section."

33. Exclusion 10.d. "Water damage," in Form HOM-7030/EP 1/09, is not a "resulting loss… itself excluded under **Building Property Losses We Do Not Cover** in this Section."

34. Exclusion 10.d. "Water damage," in Form HOM-7030/EP 1/09" was replaced by virtue of the Fuchses purchasing extended coverage, specifically coverage under Form HOM – 7311/EP 1/09, Escape of water from sump/sump pump drain (Bldg and Cont).  See Exhibit 1, FORMS APPLICABLE TO THIS POLICY section, at page 2 of HOMEOWNERS POLICY DECLARATIONS.  Specifically, quoting from this Form 7311, "To the extent coverage is provided by the EXTENSION OF COVERAGE, and up to the LIMIT OF LIABILITY described below, Section I—Building Property Losses We Do Not Cover, Water Damage, **10.d** and 10.e do not apply…." (Emphasis added.)

35. The flooding of the Premises, and associated physical loss to it and its contents, was caused by the overflow of the floor drain adjacent to the boiler.

36. Exclusion 12 ("Neglect, meaning your failure to use all reasonable means to save and preserve property at and after the time of a loss, or when property is endangered.")  was relied upon by Safeco in its March 28, 2016, letter denying the Fuchses' claims.

5

37. Safeco had no evidence of anyone's "failure to use all reasonable means to save and preserve property at and after the time of a loss" before March 29, 2016.

38. Exclusion 19 ("Fungi, Wet or Dry Rot, or Bacteria meaning the presence, growth, proliferation or spread of fungi, wet or dry rot, or bacteria.") did not apply to the Fuchses' claims because such coverage was provided for elsewhere. At Page 2 of the HOMEOWNERS POLICY DECLARATIONS for the Fuchses' residence among "OTHER INCLUDED COVERAGE/POLICY PROVISIONS" will be found "Fungi, Wet or Dry Rot, or Bactieria…(Limit) $10,000… (Premium) Included." On page 9 and 10, at ¶ 10, of the Insuring Agreement (Form HOM-7030/EP 1/09) will be found the fungi coverage provisions.

39. As of the drafting of the March 28, 2016, letter (Exhibit 3), Mr. Young did not know what was the cause of the flow of water onto the floor of the Premises.

## FIRST CLAIM FOR RELIEF, VIOLATION OF STATUTE

40. Paragraphs 1 through 39 are incorporated by reference.

41. As defined by CRS § 10-3-1115(1)(b), the Fuchses were and the Plaintiffs are "first party claimants."

42. Safeco, acting through Mr. Young, unreasonably denied payment of the Fuchses' claim for benefits owed to them under the Safeco policy covering their residence and its contents.

43. Safeco did not have a reasonable basis for denying the Fuchses' claims.

44. Safeco's unreasonable denial of the Fuchses' claim entitles the Plaintiffs, under CRS § 10-3-1116, to an award of damages, calculated at two times the covered benefit, plus attorney fees, costs and interest.

## SECOND CLAIM FOR RELIEF, BAD FAITH

45. Paragraphs 1 through 44 are incorporated by reference.

46. The Fuchses were damaged by flooding of the Premises and wetting of its contents.

47. Safeco, acting through Mr. Young and employees unknown, acted unreasonably in denying payment of the Fuchses' claim.

48. Safeco knew, at the time of its March 28, 2016, denial, that its position and conduct were unreasonable or Safeco recklessly disregarded the fact that its position and conduct were unreasonable. Specifically, but not by way of limitation, Mr. Young recklessly conducted a superficial investigation, discernment process, and policy review. Further, the letter of November 22, 2016, (Exhibit 4) brought to the attention of Mr. Young policy provisions not addressed in his March 28, 2016, letter denying the Fuchses' claim (Exhibit 3), which policy provisions were ignored in Mr. Young's letter of December 7, 2016 (Exhibit 5). Mr. Young ignored clauses of the Fuchses' policy, and, after being brought to his attention via the November 22, 2016, letter, recklessly ignored those clauses.

49. Safeco's unreasonable position and conduct was a cause of its denial of the Fuchses' claim, and thus a cause of the Fuchses' economic and non-economic damages, including costs of remediating effects of both flood and mold on the Premises and its contents, loss of use of their residence, value of time spent overseeing remediation, aggravation, anxiety, anger and emotional distress.

## THIRD CLAIM FOR RELIEF, BREACH OF CONTRACT

50. Paragraphs 1 through 49 are incorporated by reference.

51. The Fuchses entered into a contract of insurance with Safeco.

52. Pursuant to the insurance contract, the Fuchses paid premiums to Safeco.

53. As set forth above, Safeco agreed to insure the Fuchses against certain risks order the Premises and resulting losses, including flooding, overflow of drains and mold growth.

54. Safeco breached its contract with Fuchses by failing to provide to them the insurance benefits to which they were and are entitled.

55. As a result of Safeco's breach of contract, the Fuchses suffered losses, including the cost of remediating effects of flooding and mold, and the loss of use of the Premises.

## RESERVATION OF RIGHT TO AMEND TO ADD CLAIM FOR EXEMPLARY DAMAGES

Per CRS § 13-21-102, the Plaintiffs reserve the right to seek to amend their complaint to make a claim for exemplary damages

## PRAYER

Wherefore, the Plaintiffs pray for entry of judgment for the following:

A. An amount of money calculated at double the insurance benefits to which they are entitled, but which were unreasonably denied, plus attorney fees.

B. An amount of money to compensate them for both economic and non-economic losses caused by Safeco's bad faith breach of contract.

C. An amount of money equal to the value of insurance benefits which would have been provided had Safeco not breached its insurance contract.

D. Plus pre- and post-judgment costs and interest.

E. Such other relief as to the Court seems just.

## JURY DEMAND

Pursuant to C.R.C.P. 38, the Plaintiffs request a jury to decide all issues of fact.

_____
Randall S. Herrick-Stare, #7221

Plaintiffs address:

Ms. Sarah Fuchs
16700 Falcon Dr.
Nathrop, CO 81236

8